| PETTER JHENSEN FELICIANO VÁZQUEZ  Recurrido  v.  JAZMARIE CRUZ RODRÍGUEZ  Peticionaria | TA2026CE00211 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce  Caso número: PO2023RF00724  Sobre: Custodia |
|---|---|---|

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 19 de marzo de 2026.

Comparece la peticionaria, Jazmarie Cruz Rodríguez, mediante el recurso de epígrafe, y nos solicita que revoquemos la *Resolución y Orden* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 21 de enero de 2026. Mediante el dictamen recurrido, el foro primario autorizó custodia compartida provisional y relaciones filiales, sin antes llevar a cabo una vista evidenciaria.

Por los fundamentos que se exponen a continuación, se expide el auto de *certiorari* y se revoca la *Resolución y Orden* recurrida. En consecuencia, se devuelve el caso ante la consideración del foro primario, para que lleve a cabo una vista evidenciaria expedita y refiera el caso a la Unidad Social de Relaciones de Familia y Asuntos de Menores de la Región Judicial de Ponce, para la realización del informe social correspondiente sobre custodia compartida.

# I

El 16 de agosto de 2023, Peter Jhensen Feliciano Vázquez (Feliciano Vázquez o el recurrido) instó una *Petición de Relaciones Paterno Filiales* en contra de Jazmarie Cruz Rodríguez (Cruz Rodríguez o la peticionaria).[1] Esencialmente, el recurrido alegó tener dos hijos menores de edad con la peticionaria -un varón que luego advino a la mayoridad y una menor- con quienes se relacionaba ocasionalmente y respecto a quienes, además, ostentaba patria potestad compartida con la peticionaria. Como remedio, solicitó que el foro primario ordenase, en la forma específica que detalló, la manera en que deseaba se desarrollaran sus relaciones filiales con los menores.

En aquella ocasión, el foro primario refirió el caso a la atención de la Unidad Social de Relaciones de Familia y Asuntos de Menores de la Región Judicial de Ponce (Unidad Social), que presentó un informe social suplementario el 12 de marzo de 2025. Debido a que las partes no se opusieron a las recomendaciones consignadas en dicho informe, el 9 de abril de 2025, el foro primario emitió una *Resolución* en la que acogió dichas recomendaciones y detalló los términos en los que debían desarrollarse las relaciones filiales con el recurrido.[2]

Posteriormente, el 22 de agosto de 2025, Feliciano Vázquez presentó en un caso separado una *Demanda* sobre custodia compartida, con respecto a la menor.[3] Esencialmente, solicitó que el foro *a quo* les concediera a las partes custodia compartida en igual proporción de tiempo, en semanas alternas. El 10 de noviembre de 2025, Cruz Rodríguez presentó una *Contestación a Demanda*.[4]

---

[1] Entrada núm. 1 del caso núm. PO2023RF00724 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[2] Entrada núm. 103 del caso núm. PO2023RF00724 del SUMAC.

[3] Entrada núm. 2 del caso núm. PO2025RF00745 del SUMAC.

[4] Entrada núm. 7 del caso núm. PO2025RF00745 del SUMAC.

Por su parte, el 3 de diciembre de 2025, el foro primario emitió una *Sentencia* que notificó al día siguiente. En virtud de esta, desestimó sin perjuicio la demanda sobre custodia compartida, por duplicidad.[5] Así, dispuso que este asunto se dilucidara en el caso de epígrafe.

Así las cosas, y en consideración a lo expuesto por el foro *a quo* en la referida *Sentencia*, el 15 de enero de 2026, Feliciano Vázquez presentó en el caso de epígrafe una *Moción en Solicitud de Modificación de Custodia*.[6] Mediante esta, solicitó la modificación a custodia compartida, con respecto a la hija de trece (13) años que tiene con la peticionaria. En la moción, el recurrido adujo que el caso de epígrafe ya cuenta con un informe social y un informe complementario, de los cuales no surge algún impedimento para que se conceda custodia compartida. Asimismo, le solicitó al tribunal que entrevistara a la menor, con el fin de auscultar y considerar su interés al respecto.

Por su parte, y según le ordenara el foro primario, el 20 de enero de 2026, Cruz Rodríguez presentó una *Réplica a Moción en Solicitud de Custodia*.[7] En síntesis, se opuso a la solicitud de custodia compartida. Ello, debido a varias razones que detalla en el escrito. Entre estas, se destacan las siguientes: considera que el recurrido trabaja horarios que le impiden relacionarse con la menor a diario; asegura que este pretende delegar la responsabilidad de cuidar a la menor en su actual pareja; el recurrido y su pareja presuntamente no permiten que la menor comparta con su abuela paterna; durante varios fines de semana que la menor ha pasado con el recurrido y la pareja de este, ha visitado lugares donde se ingieren bebidas alcohólicas, se juega billar y se practica karaoke.

---

[5] Entrada núm. 11 del caso núm. PO2025RF00745 del SUMAC.
[6] Entrada núm. 114 del caso núm. PO2023RF00724 del SUMAC.
[7] Entrada núm. 120 del caso núm. PO2023RF00724 del SUMAC.

Así las cosas, el 21 de enero de 2026, el foro *a quo* emitió y notificó la *Resolución y Orden* recurrida.[8] Mediante esta, concedió custodia compartida *provisional* por el término de tres (3) meses. De forma cónsona, dispuso que las relaciones filiales se realizarían semanas alternas desde el viernes a las 6:00 p.m., hasta el viernes siguiente, a la misma hora, así como que la entrega y recogido de la menor se realizaría en la residencia de la peticionaria. Además, ordenó traer a la menor al tribunal el 23 de abril de 2026, a las 11:00 a.m., para realizarle una entrevista.

En desacuerdo, en igual fecha, la peticionaria solicitó reconsideración.[9] En específico, expresó oponerse a la imposición de un cambio sustancial de custodia, sin que se hubiera celebrado una vista evidenciaria. Cuestionó, además, la ausencia de determinaciones de hechos y conclusiones de derecho en la *Resolución y Orden* recurrida y subrayó que el presente caso tampoco ha sido referido a la Unidad Social, para evaluación e informe social sobre custodia compartida.

Tras considerar la solicitud de reconsideración interpuesta por Cruz Rodríguez, el 21 de enero de 2026, el foro primario emitió y notificó una segunda *Resolución y Orden*. En virtud de esta, declaró No Ha Lugar la reconsideración. Así también, expresó lo siguiente:

> Luego de este Tribunal haber entrevistado a la menor, tomando en consideración su edad, lo vertido en la entrevista y la política pública del Gobierno de Puerto Rico y actuando en el mejor bienestar de la menor se mantiene la custodia compartida provisional y las relaciones filiales establecidas mediante Resolución.[10]

Todavía inconforme, el 19 de febrero de 2026, la peticionaria acudió ante nos mediante el recurso de epígrafe, en el que adujo que el foro *a quo* cometió los errores siguientes:

---

[8] Entrada núm. 121 del caso núm. PO2023RF00724 del SUMAC.
[9] Entrada núm. 123 del caso núm. PO2023RF00724 del SUMAC.
[10] Entrada núm. 124 del caso núm. PO2023RF00724 del SUMAC.

Erró el Honorable Tribunal de Primera Instancia al mantener la custodia compartida provisional sin la celebración de una vista evidenciaria, privando a la parte peticionaria de su debido proceso de ley, en violación a las garantías constitucionales y a la normativa aplicable en casos de custodia de menores, Artículo 603 del Código Civil de Puerto Rico, Ley 55 de 1 de junio de 2020.

Erró el Honorable Tribunal al fundamentar su determinación en una entrevista judicial de la menor sin permitir a las partes contrainterrogar, presentar prueba pericial ni refutar la información considerada por el Tribunal, convirtiendo la entrevista en prueba sustantiva determinante.

Tras una evaluación preliminar del recurso ante nos, el 23 de febrero de 2026 emitimos y notificamos una *Resolución*. En esta, dispusimos que el recurrido contaba con el término reglamentario para presentar su posición en cuanto a los méritos del recurso.

Así las cosas, el 3 de marzo de 2026, Feliciano Vázquez presentó un escrito que tituló *Alegato de la parte recurrida*. En esencia, el recurrido sostuvo que procede denegar el auto discrecional solicitado. En específico, adujo que los planteamientos esbozados por la peticionaria no justifican revocar el dictamen recurrido, principalmente debido a que la ausencia de una vista evidenciaria no lo hace contrario a derecho. Ello, en la medida que el foro *a quo* no tomó una determinación de custodia de forma definitiva, sino únicamente estableció un arreglo de carácter provisional por un término breve. Por tanto, considera que el reclamo no satisface los criterios que justificarían la intervención extraordinaria de este Foro, en esta etapa de los procedimientos.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

## II

### A

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*,

212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en **casos de relaciones de familia** o que revistan interés público. Así también, la referida disposición establece que este Foro podría ejercer su discreción para revisar resoluciones y órdenes interlocutorias en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a

considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra. Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A)   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)   Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C)   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D)   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E)   Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F)   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por tanto, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un

fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B**

En nuestro ordenamiento jurídico, los casos de relaciones de familia revisten el más alto interés público y tienen carácter *sui generis*. *Otero Vélez v. Schroder Muñoz*, 200 DPR 76, 85 (2018). Por tanto, particularmente en los casos que acarrean determinaciones de custodia, el norte del juzgador debe ser el bienestar y los mejores intereses del menor. Ello, en virtud de la facultad de *parens patriae* del Estado. *Íd.*, pág. 86. Véase, además, *Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645, 651 (2016).

Por otra parte, los dictámenes sobre custodia nunca deben ser finales y definitivos. Es decir, estarán sujetos a cambios, según varíen las circunstancias de los menores. *Otero Vélez v. Schroder Muñoz*, supra, pág. 86. Es importante, además, que el juzgador, al tomar determinaciones de este tipo, tenga el beneficio del insumo de ambas partes, pues "una decisión de esa naturaleza no puede ser el producto del capricho y la improvisación". *Santana Medrano v. Acevedo Osorio,* 116 DPR 298, 302 (1985). El Tribunal Supremo

también ha expresado que, al enfrentarse a un litigio en el que se dilucida la custodia, patria potestad o las relaciones filiales de un menor, los tribunales no podemos actuar livianamente. *Pena v. Pena*, 164 DPR 949, 959 (2005).

El juzgador, además, podrá ordenar la comparecencia de aquellas personas que puedan ayudarle en el descargo de su función de *parens patriae. Muñoz Sánchez v. Báez de Jesús,* supra, pág. 652. Al respecto, el Alto Foro destaca que "[e]sta responsabilidad incluye, a su vez, la potestad de ordenar las investigaciones de índole social que el tribunal entienda procedentes". *Íd.* A esos fines, las Unidades Sociales de Relaciones de Familia y Asuntos de Menores del Poder Judicial tienen como objetivo "ofrecer al juzgador asesoramiento social mediante evaluaciones periciales que permitan tomar decisiones informadas en los casos ante su consideración". *Íd.*

Desde hace décadas, el Tribunal Supremo reconoce la custodia compartida como "un instrumento positivo y una solución adicional que los tribunales poseen en el delicado descargo de sus funciones de *parens patriae,* para enfrentar el serio problema de las relaciones entre padres e hijos ante la ruptura del vínculo matrimonial". *Ex parte Torres*, 118 DPR 469, 483 (1987). De forma cónsona, hay que recordar que nuestro Alto Foro considera que toda determinación judicial sobre custodia conlleva la necesidad de realizar un análisis "objetivo, sereno y cuidadoso de todas las circunstancias [...], teniendo como único y principal objetivo el bienestar de los menores". *Santana Medrano v. Acevedo Osorio,* supra, pág. 301.

Actualmente, el concepto de custodia compartida se encuentra codificado en la Ley Núm. 55-2020, según enmendada, conocida como *Código Civil de Puerto Rico de 2020*. En lo pertinente, el Artículo 602 establece lo siguiente:

Custodia compartida es la obligación de ambos progenitores de ejercer directa y totalmente todos los deberes y funciones que conlleva la patria potestad de los hijos, relacionándose con estos el mayor tiempo posible y brindándoles la compañía y atención que se espera del progenitor responsable.

La custodia compartida no requiere que un menor pernocte el mismo tiempo en la residencia de ambos progenitores. En este caso, el tribunal puede conceder la custodia compartida de los hijos menores de edad o de hijos mayores de edad de los que comparten la patria potestad prorrogada, si el otro progenitor se relaciona de forma amplia y desempeña responsablemente todas las funciones que como progenitor le corresponden y la patria potestad le impone.

31 LPRA sec. 7281. Véase, además, *Jusino González v. Norat Santiago*, 211 DPR 855, 863-864 (2023).

Así pues, previo a una adjudicación de custodia compartida, en aquellos casos en que no haya un acuerdo previo al respecto por parte de los progenitores, el tribunal puede adjudicar custodia provisional. Este aspecto se encuentra codificado en el Artículo 603 sobre "prioridad a la determinación de custodia compartida", el cual dispone, en lo pertinente, lo siguiente:

[…]

Si falta el acuerdo previo entre los progenitores, **el tribunal citará para vista expedita, para la adjudicación de la custodia provisional**. En la vista, **el tribunal evaluará la prueba** y considerará conceder a las partes la custodia compartida provisional de sus hijos siempre que ello se ajuste al interés óptimo del menor.

31 LPRA sec. 7282. (Negrillas suplidas).

A pesar de que el Tribunal Supremo no se ha expresado a los fines de interpretar el Artículo 603, hacemos referencia a lo resuelto por este Tribunal de Apelaciones en *Fuente Morales v. Rodríguez López*,[11] por su carácter altamente persuasivo. En esa ocasión, uno de nuestros paneles hermanos concluyó que, aun en los casos en que la determinación de custodia sea *provisional* y en estricto cumplimiento con el Artículo 603, *supra*, el foro primario está obligado a llevar a cabo una vista evidenciaria expedita que les

---

[11] Véase *Sentencia* emitida el 20 de julio de 2023 en el caso núm. KLCE202300701.

posibilite a las partes presentar prueba sobre sus alegaciones, en torno a dónde reside el *interés óptimo del menor.*

Así, al hacer una determinación sobre custodia compartida respecto a un menor, el tribunal deberá examinar los factores siguientes:

(a) La salud mental de ambos progenitores y de los hijos;

(b) el nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores;

(c) si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar;

(d) la capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras;

(e) el historial de cada progenitor en la relación con sus hijos;

(f) las necesidades específicas de cada uno de los hijos menores cuya custodia se solicita;

(g) la relación del hijo con sus progenitores, sus hermanos y otros miembros de la familia;

(h) la capacidad, disponibilidad y compromiso de los progenitores de asumir la responsabilidad de criar los hijos conjuntamente;

(i) la razón o los motivos de los progenitores para solicitar la custodia compartida;

(j) si la profesión u oficio que ejercen los progenitores no es un impedimento para ejercer una custodia compartida;

(k) si la ubicación y distancia entre las residencias de los progenitores perjudica la educación del hijo;

(l) la comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos; y

(m) cualquier otro criterio que pueda considerarse para garantizar el interés óptimo de los hijos.

Artículo 604 de la Ley Núm. 55-2020, 31 LPRA sec. 7283. Véase, además, *Jusino González v. Norat Santiago,* supra, págs. 864-865.

Como parte de los criterios a considerarse en cualquier proceso de adjudicación de custodia, la Ley Núm. 223-2011, según enmendada, conocida como *Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia,*[12] dispone la

---

[12] Nótese que, si bien el *Código Civil de 2020* incorporó un articulado sobre custodia compartida esencialmente basado en disposiciones básicas de la Ley Núm. 223-2011, esta legislación continúa vigente e incluso prevalece sobre el

necesidad de que un trabajador social realice un informe. En lo pertinente, el Artículo 7 del referido estatuto dispone lo siguiente:

> Al considerarse una solicitud de custodia en la que surjan controversias entre los progenitores en cuanto a la misma, el tribunal **referirá el caso al trabajador social de relaciones de familia, quien realizará una evaluación y rendirá un informe con recomendaciones al tribunal**. [...]

32 LPRA sec. 3185. (Negrillas suplidas).

En fin, también es importante reseñar que los dictámenes de custodia en general, así como también específicamente los de custodia compartida, no adquieren carácter de cosa juzgada. Para abordar este particular, conviene hacer referencia al Artículo 10 de la Ley Núm. 223-2011, el cual reza como sigue:

> La determinación de un tribunal sobre custodia de menores, no constituirá cosa juzgada. Cuando uno de los progenitores de un menor de edad entienda que deben darse cambios en la relación de custodia del otro progenitor existente con sus hijos para garantizar el mejor bienestar de éstos, podrá recurrir al tribunal y presentar una solicitud a dichos efectos. En la solicitud, el progenitor deberá expresar las razones sobre las cuales fundamenta la misma. El procedimiento para revisar una determinación previa al tribunal, será similar al que se fija en las secs. 3182, 3184, 3185 y 3186 de este título.

32 LPRA sec. 3188.

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

### III

Sin lugar a duda, el recurso de *certiorari* es el vehículo procesal adecuado para procurar la revisión de la *Resolución y Orden* recurrida. Ello, por tratarse de un dictamen interlocutorio emitido por el foro primario en un caso de relaciones de familia. Así las cosas, luego de evaluar el recurso a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra*, concluimos que, en este caso, procede ejercer nuestra discreción revisora para revocar el dictamen recurrido, debido a que se cometieron los errores señalados por la peticionaria. Veamos.

---

Código, en caso de surgir alguna inconsistencia. Véase exposición de motivos de la Ley Núm. 55-2020, conocida como *Código Civil de Puerto Rico 2020*.

Mediante los señalamientos de error formulados, la peticionaria adujo que el foro primario erró al mantener la custodia compartida provisional, sin la celebración de una vista evidenciaria. Es su postura que dicho curso de acción le privó de su debido proceso de ley, en violación a las garantías constitucionales y a la normativa aplicable en casos de custodia de menores. Lo anterior, conforme al Artículo 603 de la Ley Núm. 55-2020, *supra*.

De forma cónsona, Cruz Rodríguez sostuvo que el foro *a quo* también incidió al fundamentar su determinación únicamente en una entrevista judicial realizada a la menor. Ello, sin permitirle a las partes contrainterrogar, presentar prueba pericial, ni refutar la información evaluada por el foro primario. Considera que, al así actuar, la entrevista realizada a la menor se convirtió en prueba sustantiva determinante.

Cabe destacar que, en su argumentación, la peticionaria también destaca que, de conformidad con el Artículo 10 de la Ley Núm. 223-2011, *supra,* era necesario que el foro *a quo* refiriese el caso a la Unidad Social para que un trabajador social prepare un informe social con recomendaciones especialmente orientadas a la adjudicación de custodia compartida. Tiene razón la peticionaria.

Según discutiéramos, el Artículo 603 del *Código Civil Rico de 2020*, supra, es claro al consignar que, en aquellos casos en que los progenitores no acuerden los términos de la custodia, es indispensable que el foro primario lleve a cabo una *vista*. Según el texto claro de dicho artículo, esta debe ser *expedita* y, como resultado de esta, el foro *a quo* deberá *evaluar la prueba* que las partes hayan presentado. Todo lo anterior, como preámbulo a la adjudicación de una *custodia provisional*.

Consideramos de suma importancia enfatizar que la celebración de una vista expedita como requisito para determinar custodia provisional es un imperativo que surge expresamente del

texto claro del Artículo 603 del *Código Civil Rico de 2020*, supra. Por consiguiente, tratándose de un imperativo legal, su cumplimiento no está sujeto al arbitrio del juzgador, en la medida que no es un ejercicio discrecional, como sugiere una minoría de este Panel. En ese sentido, no debe entenderse que lo que resuelve esta mayoría interfiere en modo alguno con la discreción judicial de que está revestido el foro primario. Ello, pues, una vez satisfecho el mandato de ley, el foro *a quo* adjudicará los méritos de la petición de custodia provisional ante sí, de conformidad con el valor probatorio que le merezca la prueba presentada. No debe entenderse que lo que aquí resolvemos, en modo alguno le resta a esta facultad.

Del mismo modo, subrayamos el hecho de que, a pesar de la aprobación del *Código Civil de 2020* y según surge expresamente de su exposición de motivos, la Ley Núm. 223-2011 continúa vigente. Esta, en su Artículo 7, *supra*, dispone la necesidad de referir los casos de custodia a la Unidad Social, para la realización de un informe social por parte de un trabajador social, quien, al realizar su recomendación, deberá tomar en consideración la multiplicidad de criterios que ahí se codifican.

Así las cosas, luego de considerar los argumentos de las partes a la luz del derecho aplicable, no tratándose de una adjudicación de custodia de emergencia, y en consideración a los imperativos del debido proceso de ley, concluimos que procede revocar la *Resolución y Orden* recurrida. Ello, a los fines de ordenarle al foro primario que lleve a cabo la vista expedita que exige el Artículo 603 del *Código Civil de 2020*, *supra*, lo cual le permitirá evaluar la prueba que la partes tengan a su haber presentarle. Así también, de conformidad con el Artículo 7 de la Ley Núm. 223-2011, *supra*, corresponde referir el caso a la Unidad Social, para que un trabajador social le rinda al tribunal el informe correspondiente.

## IV

Por los fundamentos que anteceden, expedimos el auto de *certiorari* y revocamos la *Resolución y Orden* recurrida. En consecuencia, se devuelve el caso ante la consideración del Tribunal de Primera Instancia, Sala Superior de Ponce, para que lleve a cabo una vista evidenciaria expedita y refiera el caso a la Unidad Social de Relaciones de Familia y Asuntos de Menores de la Región Judicial de Ponce para la realización del informe social correspondiente sobre custodia compartida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El juez Salgado Schwarz disiente mediante voto escrito.

Notifíquese inmediatamente.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| PETTER JHENSEN FELICIANO VÁZQUEZ<br><br>Recurrido<br><br>v.<br><br>JAZMARIE CRUZ RODRÍGUEZ<br><br>Peticionaria | TA2026CE00211 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso número: PO2023RF00724<br><br>Sobre: Custodia |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

## OPINIÓN DISIDENTE DEL JUEZ CARLOS G. SALGADO SCHWARZ

En San Juan, Puerto Rico, a 19 de marzo de 2026.

Mediante la adjudicación desde la comodidad de nuestros despachos judiciales, el panel al que pertenezco procede a despojar al juzgador del Tribunal de Primera Instancia de su discreción en la atención de un proceso de custodia y relaciones filiales que se realiza en el "terreno de juego" y teniendo la información de primera mano.

No se puede perder de perspectiva que nuestro ordenamiento requiere en diversas instancias la celebración de "vistas", que no presuponen necesariamente la elaboración de un descubrimiento de prueba extenso, ni un desfile de prueba testifical pericial, para atender asuntos que son, en esencia, en equidad y **provisional**. Para muestra de esto, en el ámbito penal, se atienden vistas de determinación de causa para arresto al amparo de la Regla 6 de Procedimiento Criminal,[1] donde el Ministerio Público presenta su prueba

---

[1] REGLA 6. – ORDEN DE ARRESTO A BASE DE UNA DENUNCIA. (34 L.P.R.A. Ap. II, R. 6)



en dicha **vista evidenciaría**, mediante la declaración jurada de algún testigo, y donde el imputado no puede contrainterrogar el papel. Ese proceso, nuestro ordenamiento dispone que **no viola derechos fundamentales**.

Entonces, ¿por qué razón vamos a intervenir con la decisión de una distinguida magistrada que tuvo la oportunidad de **escuchar a las partes, incluyendo a la consabida menor de edad cuya custodia está ante su consideración?**

Si tanto queremos intervenir con las determinaciones provisionales realizadas por los profesionales del derecho que tienen a su disposición los elementos de juicio necesarios para tomarlas, pues debemos entonces retirarnos al foro de instancia y atender nosotros mismos el asunto y resolverlo, quitándole entonces al Juez del TPI completamente su labor.

Mis compañeras insinúan que este Juez lo que expresa es que la celebración de la vista es un asunto discrecional, y no es así, ya que lo que expreso este juez en pocas palabras es que **la vista se celebró**. En ningún momento la ley expone algún libreto particular, o montaje escénico específico para atender esta vista. Si la "minoría del panel"[2] está equivocado en esto, ruego entonces que se nos aclare donde está el manual de instrucciones para procurar que la magistrada en el foro *a quo* sepa como conducir dicha vista, y a la vez, donde encender el interruptor de luz del Salón de Sesiones correspondiente.

---

[2] Véase Sentencia, página 14.

Por entender que la determinación tomada por la distinguida compañera Jueza del TPI goza de la corrección y deferencia necesaria para abstenernos de intervenir, me veo en la humilde obligación de diferir y disentir de mis hermanas en el sacerdocio.

Por los fundamentos anteriormente esbozados, muy respetuosamente, *DISIENTO*.



**Carlos G. Salgado Schwarz**
**Juez de Apelaciones**